# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| APRIL BECK, individually, and on Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| VNA HOMECARE, INC., d/b/a VNA TIP HOMECARE, | ) Case No.: 3:12-CV-00330-DRH-PMF ) ) ) |
| Defendant. | ) |
| GAYLE HATFIELD, individually, and on Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| VNA HOMECARE, INC., d/b/a VNA TIP HOMECARE, | ) Case No.: 3:12-CV-00331-DRH-PMF ) ) ) |
| Defendant. | ) |
| MICHELE MARLOW AND TONYA SMITH, individually, and on Behalf of All Others Similarly Situated, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) Case No.: 3:12-CV-00332-DRH-PMF |
| VNA HOMECARE, INC., d/b/a VNA TIP HOMECARE, | ) ) ) |
| Defendant. | ) |

| | |
|---|---|
| **MICHELLE WHITE, individually, and on Behalf of All Others Similarly Situated,** ) ) ) | |
| **Plaintiffs,** ) ) | |
| **v.** ) ) | |
| **VNA HOMECARE, INC., d/b/a VNA TIP HOMECARE,** ) ) ) | **Case No.: 3:11-CV-00971-DRH-PMF** |
| **Defendant.** ) ) ) | |

**PLAINTIFFS' UNOPPOSED MOTION AND MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## I. INTRODUCTION

Plaintiffs, April Beck, Gayle Hatfield, Michelle Marlow, and Tonya Smith, by and through their counsel, Aaron B. Maduff and Walker R. Lawrence of Maduff & Maduff LLC, and Plaintiff Michelle White, by and through her counsel, Terrence Buehler of Touhy, Touhy & Buehler, LLP (collectively hereafter "Plaintiffs") seek preliminary approval of a proposed class and collective action Settlement Agreement which is fair, reasonable, and adequate for the Settlement Class. In this unopposed motion, Plaintiffs seek preliminary approval of the Settlement Agreement, which resolves the claims of the proposed Settlement Class of approximately 754 current and former Healthcare Providers of VNA HomeCare, Inc. ("VNA"). The proposed Settlement satisfies all the criteria for preliminary class settlement approval.

Thus, Plaintiffs request the Court enter an Order that: (1) grants preliminary approval to the proposed Class Action Settlement Agreement; (2) certifies the proposed Settlement Class under Fed. R. Civ. P. 23(b)(3) and under 29 U.S.C. §216(b); (3) appoints a Class Counsel and Lead Class Counsel; (4) approves the proposed notice program, including the contents of the Notice of Settlement and proposed procedures for returning the Notice of Settlement; (5) requires that all valid Claim Forms/FLSA Consent Forms be postmarked no later than forty-five (45) days after the mailing of the Notice of Settlement; (6) requires all objections be postmarked no later than forty-five (45) days after the mailing of the Notice of Settlement to the Claims Administrator; (7) requires all Requests for Exclusions Forms be postmarked no later than forty-five (45) days after the mailing of the Notice of Settlement; (8) requires Lead Class Counsel to file all objections and other papers in support of such objections with the Court no later than 65 days after mailing of the Notice of Settlement; (9) sets a date for the Fairness Hearing; and (10)

sets a date for Class Counsel to file a petition for an award of attorneys' fees and costs seven days prior to the Fairness Hearing.

## II. STATEMENT OF THE FACTS

### A. Factual and Procedural Background

On October 28, 2011 Plaintiff White filed her class action complaint, on behalf of herself and other similarly situated persons who were employed by Defendant as Field RN Staff, Field LPN Staff, Field CNA staff and Therapy Staff.[1] The White Complaint (*White v. VNA Homecare, Inc.* Case No. 11-CV-971-DRH-PMF) alleged, *inter alia*, that Defendant failed to pay Plaintiff White and the class, compensation for hours worked in excess of 40 in a week at a rate of no less than one and one half times the regular rate of pay, in violation of the Fair Labor Standards Act, 29 U.S.C. 201, *et seq*. ("FLSA"), the Illinois Minimum Wage Law, 820 ILCS 105/1, *et seq*. ("IMWL"), and the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, *et seq*. ("IWPCA"). On April 26, 2012, Plaintiffs Beck, Hatfield, Marlow and Smith, filed three separate class action Complaints[2], alleging various claims arising under the FLSA, IMWL, and IWPCA. Shortly after filing their complaints, Plaintiffs Beck, Hatfield, Marlow and Smith filed motions for conditional certification under 29 U.S.C. §216(b). That motion was fully briefed for the Court on or about August 20, 2012.

On October 4, 2012 before the Court entered an order on the motion seeking conditional certification in *Beck*, *Hatfield*, and *Marlow*, Plaintiff White and VNA presented the Court with a Memorandum of Understanding ("MOU") outlining a proposed settlement in *White*. Shortly after

---

[1] That Complaint was later amended on February 10, 2012 with substantially similar allegations.
[2] The difference between the complaints filed in *Beck v. VNA Homecare, Inc.* 3:12-cv-00330-DRH-PMF, *Hatfield v. VNA Homecare, Inc..* 3:12-cv-00331-DRH-PMF, and *Marlow et al v. VNA Homecare, Inc.*, 3:12-cv-00332-DRH-PMF were explained in detail in previously filed responses to a motion to consolidate in *White.*

2

filing the MOU Plaintiffs Beck, Hatfield, Marlow and Smith filed an objections to the MOU and after a hearing before the Court on October 18, 2012, the Plaintiffs and VNA agreed to explore further settlement possibilities that would resolve all four cases filed against VNA. As part of those settlement discussions, VNA disclosed additional information regarding the putative class which was further analyzed and manipulated by counsel for Plaintiffs Beck, Hatfield, Marlow and Smith.

On February 6, 2013 the Court entered an order appointing Hunter Hughes as the mediator and on May 1, 2013 the Parties participated in mediation with Mr. Hughes. In connection with this mediation and further settlement efforts, Counsel for the Parties exchanged information and data, and engaged in good faith arm's-length negotiations. The Parties reached the Settlement set forth in the Stipulation of Settlement, attached hereto as Attachment 1.

### III.   THE PROPOSED SETTLEMENT

The Proposed Settlement Agreement is attached for Court review as Attachment 1. The following summarizes the Settlement Agreement's terms:

#### A.   **The Settlement Class and Class Period**

The Settlement Class is defined as all Plaintiffs and all similarly-situated individuals who worked as healthcare providers for VNA HomeCare, Inc. in Illinois and Missouri between April 19, 2009 and May 25, 2013 ("Class Period"). "Healthcare Providers" shall mean all persons who worked for VNA at any time during the Class Period in any of the following positions: (1) Registered Nurses (RNs); (2) Licensed Practical Nurses (LPNs); (3) Certified Occupational Therapy Assistants (COTAs); (4) Occupational Therapists (OTs); (5) Physical Therapists (PTs);

(6) Physical Therapy Assistants (PTAs); (7) Speech Therapists (STs); (8) Home Health Aides (HHAs); and (9) Certified Nursing Aides (CNAs). *See* Attachment 1, p. 3.

      B.      **Payments to Class Members**

The Global Settlement Fund is for $900,000.00. After attorneys' fees, expenses and incentive payments have been deducted from the Global Settlement Fund, the remaining funds shall constitute the Net Settlement Amount (defined in Article V, section 5.02(c)). Class Members shall then be able to make timely, valid claims against the Net Settlement Amount, and any remaining funds not claimed from the Net Settlement Amount shall be returned to VNA as set forth below. This Net Settlement Amount will be divided into two separate groups of employees classified by VNA: (1) Exempt Healthcare Providers; and (2) Non-Exempt Healthcare Providers.

Healthcare Providers classified as Exempt (516 of the 754 Claimants) will be eligible to make claims against five-sixths ($5/6^{th}$) of the Net Settlement Amount. That portion of the Net Settlement Amount that is allocated to HealthCare Providers classified as Exempt will be allocated to each Claimant based on each individual's pro rata share of the settlement based on the number of recorded hours at VNA during the Class Period.

Those HealthCare Providers who have been classified as Non-Exempt will be eligible to make claims against one-sixth ($1/6^{th}$) of the Net Settlement Amount. That portion of the Net Settlement Amount that is allocated to HealthCare Providers who have been classified as Non-Exempt will be allocated to each Claimant based on that individual's pro rata share of the settlement based on his or her number of workweeks at VNA during the Class Period.

After 180 days has expired since payments from the Net Settlement Amount are issued to those HealthCare Providers who submit timely, valid claims for payment, the remainder of the

4

Settlement Fund, including the amount of any unclaimed payments or uncashed payment checks, will revert to and be paid to VNA.

### C. Class Representative Incentive Payment

The Settlement Agreement also contemplates "Incentive Payments" to be paid to the Plaintiffs in the following amounts: (i) $5,000 to Tonya Smith; (ii) $5,000 to Gayle Hatfield; (iii) $2,500 to Michelle White; (iv) $2,500 to Chester Jackson; (v) $2,500 to April Beck; and (vi) $2,500 to Michele Marlow. These payments are in addition to any payment they will receive as their settlement share as Claimants in the Settlement Class. These Incentive Payments are in recognition of the time and effort the Plaintiffs undertook in prosecuting this lawsuit, and their service to the Class. Their efforts will result in the payment of earned overtime payments to the 754 eligible class members.

The class representatives are an essential "ingredient" in any class action, and thus an incentive award may be due to those individuals for their participation that serves to benefit the class. *Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998). "In deciding whether such an award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Id.* Recent decisions in this Circuit have approved incentive awards as high as $25,000 per named plaintiff. *Id.*; S*ee also Berger v. Xerox Corp. Ret. Income Guar. Plan,* No. 00-584-DRH, 2004 U.S. Dist. LEXIS 1819, at * 7 (S.D. Ill. Jan. 22, 2004); *Schmidt v. Smith & Wollensky LLC*, Case No. 09-2752 (N.D. Ill) (Dkt. #78, ¶5) (awarding $10,000 incentive award in an Illinois Minimum Wage Law case); *Arrez. v. Kelly Services, Inc*., Case No. 07 C 1289, ECF No. 177 (N.D. Ill. Oct. 8, 2009) (awarding $10,000 to each of two class representatives in an IWPCA vacation pay case).

In this case, the Plaintiffs were responsible for initiating and maintaining this action, actively participating in the case, regularly communicating with class counsel, and otherwise performed everything that was asked of them. Moreover Plaintiffs Tonya Smith and Gayle Hatfield traveled to Chicago to attend and participate in person at the mediation on May 1, 2010. Without the Plaintiffs' efforts, this case would not have been filed and this settlement would not have been achieved. The incentive payment is well-deserved for their efforts and contribution to the case.

D.  **Claims Administration and Notice**

The Parties have agreed to use Strategic Claims as Claims Administrator.  The duties of the Claims Administrator are set forth in paragraph 9 of the Settlement Agreement.  All costs of the Claims Administrator will be paid by the Defendant.  Defendant has agreed to reasonably cooperate with the Claims Administrator and to provide all available and accurate information necessary to calculate the amounts to be paid to each class member, to the extent it is reasonably available, and to reasonably assist the Claims Administrator to locate Settlement Class Members.

The Parties' proposed notice program includes the Notice (Ex. [INSERT] to Attach. 1), the Opt-In Form and Release (Ex. [INSERT] to Attach. 1), and telephone contact information for Class Counsel.  The Notice includes all essential information about the lawsuit required under Rule 23(c)(2)(B), including the persons affected, class definitions, the nature of the action, the possibility of, and method for, opting-out along with a description of the various methods of obtaining additional information.

E.  **Attorneys' Fees and Costs**

The Settlement Agreement provides that payment to all Class Counsel will not exceed $270,000.00 for attorney's fees which represents the time and costs invested in this case by Class

Counsel and to be invested in the future and reimbursement of expenses that will be up to $15,000.00. The Court will make an award of attorneys' fees and expenses separately to all Class Counsel with appearances on file in any of the Lawsuits after petitions for attorneys' fees and costs are filed with the Court before the Fairness Hearing.

## IV.  THE COURT SHOULD GRANT PRELIMINARY APPROVAL

### A.  Settlement and Class Action Approval Process

As a matter of public policy, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting that "strong judicial policy... favors settlements, particularly where complex class action litigation is concerned"); *see also* 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 (3d ed. 1992) (collecting cases). The traditional means for handling claims like those at issue here — individual litigation — would unduly tax the court system, require a massive expenditure of public and private resources and, given the relatively small value of the claims of the individual Class Members, would be impracticable.

The proposed Settlement, therefore, is the best vehicle for Class Members to receive the relief to which they are entitled in a prompt and efficient manner.

The *Manual for Complex Litigation* describes a three-step procedure for approval of class action settlements:

    (1)    Preliminary approval of the proposed settlement at an informal hearing;

    (2)    Dissemination of mailed and/or published notice of the settlement to all affected class members; and

  (3) A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Manual for Complex Lit.*, at § 21.632–34.  This procedure, used by courts in this Circuit and endorsed by the leading class action treatise, safeguards the due process rights of absent class members and enables the Court to fulfill its role as the guardian of class interests.  *See* 2 Newberg & Conte, at § 11.22, *et seq.*

  With this motion, the Parties request that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement.  The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement is within the "range of reasonableness," and thus whether notice to the class of the settlement's terms and the scheduling of a formal fairness hearing is worthwhile.  *Id.,*  § 11.25 at 11-36, 11-37.

  The decision to approve a proposed settlement is committed to a district court's sound discretion.  *See Moore v. Nat'l Ass'n of Sec. Dealers, Inc.*,  762 F.2d 1093, 1106 (D.C. Cir. 1985) ("Rule 23 places the determination [to approve or reject a proposed settlement] within the sound discretion of the trial judge who can be sensitive to the dynamics of the situation"); *City of Seattle*, 955 F.2d at 1276 (in context of class action settlement, appellate court cannot "substitute [its] notions of fairness for those of the [trial] judge and the parties to the agreement," and will reverse only upon strong showing of abuse of discretion).

  The Court's preliminary approval will allow all Class Members to receive notice of the proposed Settlement's terms, their rights under the Settlement, procedures to object to the Settlement and the date and time of the fairness hearing.  *See Manual for Compl. Lit.*, at

8

§§ 13.14, 21.632. At that hearing Class Members may be heard, and further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement may be presented.

> B. **The Criteria for Preliminary Settlement Approval Are Satisfied**
>
>> 1. **The Proposed Settlement Offers A Beneficial Resolution To This Litigation, Thus Warranting Both This Court's Preliminary Approval And An Opportunity For The Class Members To Consider Its Terms**

A proposed class settlement will be preliminarily approved if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C); *Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646, 652 (7th Cir. 2006). Utilizing a five-factor test, a court must consider: (1) the strength of plaintiffs' case compared with the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Synfuel,* 463 F.3d at 653; *Isby v. Bayh,* 75 F.3d 1191, 1199 (7th Cir. 1996). Further, a court must not focus on an individual component of the compromise, but must instead view the settlement in its entirety. *Isby,* 75 F.3d at 1199.

At the preliminary approval stage, a court's task is to determine whether the proposed settlement is "within the range of possible approval," *Armstrong v. Board of School Directors,* 616 F.2d 305, 314 (7th Cir. 1980) (internal citations omitted), considered in the light most favorable to the settlement. *Id*. Accordingly, the preliminary approval proceedings should not be transformed into an abbreviated trial on the merits. *See, e.g., Mars Steel Corp. v. Cont. Ill. Nat'l Bank & Trust Co.*, 834 F.2d 677, 684 (7th Cir. 1987). As the Seventh Circuit wrote:

> Because settlement of a class action, like any litigation, is basically a bargained for exchange between litigants, the judiciary's role is properly limited to the

>   minimum necessary to protect the interest of the class and the public.  Judges
>   should not substitute their own judgment as to optimal settlement terms for the
>   judgment of the litigants and their counsel.

*Armstrong,* 616 F.2d at 315.

Finally, a strong presumption of fairness exists when the settlement is the result of extensive arm's-length negotiations.  *Great Neck Capital Appreciation Inv. P'Ship, L.P. v. Pricewaterhouse Coopers*, 212 F.R.D. 400, 410 (E.D. Wis. 2002).

### 2. This Settlement Is the Product of Serious, Informed, and Arm's-Length Negotiations

Arm's-length negotiations conducted by competent counsel constitute *prima facie* evidence of fair settlements.  *Berenson v. Faneuil Hall Marketplace*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("where . . . a proposed class settlement has been reached after meaningful discovery, after arm's-length negotiation by capable counsel, it is presumptively fair.").  The Settlement here is the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation in general and with the legal and factual issues of this case in particular.  Class Counsel is experienced in the litigation, certification, trial, and settlement of wage and hour cases, including nationwide class action cases.  Settlement negotiations were conducted in earnest after VNA disclosed significant data and information regarding a sampling of the putative class and thereafter the case was mediated with Hunter Hughes, a national recognized mediation expert in wage and hour cases, on May 1, 2013.  The Parties continued to negotiate vigorously until a settlement of material terms was ultimately reached in in July 2013, which they now tender to this court for approval.  Class Counsel supports the resulting settlement as fair, adequate and reasonable.  *Id.*

### 3. The Settlement Provides Substantial Relief for Class Members

As explained above, the Net Settlement Amount is divided between to two groups of

10

employees: (1) Exempt Healthcare Providers; and (2) Non-Exempt Healthcare Providers.

As part of the proposed distribution, Healthcare Providers classified as Exempt (516 of the 754 Claimants) will be eligible to make claims against $5/6^{th}$ of the Net Settlement Amount. That portion of the Net Settlement Amount that is allocated to HealthCare Providers classified as Exempt will be allocated to each Claimant based on each individual's pro rata share of the settlement based on the number of recorded hours at VNA during the Class Period.

The Non-Exempt HealthCare Providers will be eligible to make claims against $1/6^{th}$ of the Net Settlement Amount. That portion of the Net Settlement Amount that is allocated to Non-Exempt HealthCare Providers will be allocated to each Claimant based on each individual's pro rata share of the settlement based on his or her number of workweeks at VNA during the Class Period.

### 4. Preliminary Certification of the State Law Class is Appropriate

The Parties request that the Court preliminarily certify the proposed State Law Class for settlement purposes. The Class under the State Law Claims is defined as "Plaintiffs and all similarly-situated individuals who worked as healthcare providers for VNA HomeCare, Inc. in Illinois and Missouri between April 19, 2009 and May 25, 2013. Attachment 1, p. 3. Preliminary class certification is appropriate in part because the Parties have agreed to cooperate to effectuate the terms of the Settlement. Because the Parties have reached an agreement regarding class certification in the context of this Settlement, the Court may enter an order preliminarily certifying the Class for settlement purposes. That order will allow notice of the proposed Settlement to issue to affected individuals, and will inform them of their rights to be heard on the Settlement's fairness; to opt out; and to attend the fairness hearing. *See Manual for*

*Complex Lit.* at §§ 21.632, 21.633.

### The Parties' Proposed Notice Program

The notice protocol identified in the Settlement Agreement provides proper notice to affected individuals. "Rule 23(e)(1)(B) requires the Court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Complex Lit.* at § 21.312. Many of the same considerations govern both certification and settlement notice. In order to protect the rights of absent class members, a court must require the best notice practicable to class members. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12 (1985). The Parties' proposed notice procedure meets the requirements of Rule 23, and accordingly Plaintiffs request that the Court approve the Notice forms and protocol.

### Scheduling A Final Approval Hearing Is Appropriate

The last step in the Settlement approval process is a final fairness hearing at which the Court may hear all evidence and argument necessary to make its Settlement evaluation. Proponents of the Settlement may explain the terms and conditions of the Settlement, and offer argument in support of final approval. In addition, Class Members, or their counsel, may be heard in support of or in opposition to the Settlement Agreement. The Court will determine after the Final Approval Hearing whether the Settlement should be approved, and whether to enter a Final Approval Order and judgment under Rule 23(e). The Parties request that the Court set a date for the Fairness hearing to held by the Court at least 100 days after the Preliminary Approval Order.

### V.   CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request the Court enter an Order that: (1) grants preliminary approval to the proposed Class Action Settlement Agreement; (2) certifies the proposed Settlement Class under Fed. R. Civ. P. 23(b)(3) and under 29 U.S.C. §216(b); (3) appoints Class Counsel and Lead Class Counsel; (4) approves the proposed notice program, including the contents of the Notice of Settlement and proposed procedures for sending the Notice of Settlement; (5) requires that all valid Claim Forms/FLSA Consent Forms be postmarked no later than forty-five (45) days after the mailing of the Notice of Settlement; (6) requires all objections be postmarked no later than forty-five (45) days after the mailing of the Notice of Settlement; (7) requires all Requests for Exclusions Forms be postmarked no later than forty-five (45) days after the mailing of the Notice of Settlement; (8) requires Lead Class Counsel to file all objections and other papers in support of such objections with the Court no later than 65 days after mailing of the Notice of Settlement; (9) sets a date for the Fairness Hearing; and (10) sets a date for Class Counsel to file a petition for an award of attorneys' fees and costs seven days prior to the Fairness Hearing.

_____
Terrence Buehler
Touhy, Touhy & Buehler, LLP
55 West Wacker Drive, 14th Floor
Chicago, IL 60602

/s/ Walker R. Lawrence_____
Aaron B. Maduff, 6226932
Michael L. Maduff, 6198714
Walker R. Lawrence, 6296405
Maduff & Maduff, LLC
205 N. Michigan Ave., Suite 2050
Chicago, IL 60601